## ATLANTIC OIL PRODUCTION CO. v. RAILROAD COMMISSION OF TEXAS et al.

### No. 8336.

Court of Civil Appeals of Texas. Austin.
June 26, 1935.

Rehearing Denied July 24, 1935.

Black & Graves, of Austin, and Thos. R. Freeman, of Dallas, and John W. Stayton, of Austin, for appellant.

Wm. McCraw, Atty. Gen., and Harry S. Pollard, Asst. Atty. Gen., for appellee Railroad Commission of Texas.

J. W. Wheeler and Langston Smith, both of Austin, and W. G. Banks, of Houston, for appellee Mike Glasscock, Inc.

McCLENDON, Chief Justice.

Appeal from a final judgment in favor of defendants, in an action to set aside an order of the Railroad Commission granting an application to drill a third oil well on a 6-acre tract in the East Texas field as an exception to rule 37, prohibiting the

drilling of wells nearer together than 660 feet and nearer than 330 feet to a property line. The order recited that the application was granted "to prevent confiscation of property."

The situation presented for review will be more readily grasped by reference to the following map, showing the adjacent development at the time the application was granted:

Humble to the E., N. E., and S. E. 1 to 6.6 acres (37 on 245 acres).

Gulf to the S. and S. W. 1 to 5.3 acres (13 on 69 acres).

To quote the undisputed testimony: "It (the M. G.) has an advantage over all three leases except the Glasscock lease to the west, with which it has an equal density."

The tract in question is the Mike Glasscock (abbreviated hereafter as M. G.), which is in length 819.4 feet E. to W., with a N. to S. width of 316.67 feet.

The density of wells on this tract (1 to 3 acres) is greater than that of any of the surrounding leases, with the exception of the C. G. Glasscock to the W., as to which the density is equal (2 wells on an identical 6-acre tract). The densities on the other adjacent leases are:

Atlantic to the N. and N. W. 1 to 4.3 acres (7 on 30 acres).

If the adjacent area be limited to eight times the area of the involved tract, that is eight tracts of the same area placed at the four cardinal and four intermediate points of the compass (N., N.E., E., S.E., S., S.W., W. and N.W.), which is one of the recognized methods of comparing density, substantially the same result would be reached.

If the "direct and equidistant offset" theory be applied, the disadvantage, if any, of the M. G. tract is so slight as to be negligible.

Humble No. 31 is 126 feet E. and 173 feet N. of the N. E. corner of the M. G. Well No. 2 of the M. G. is 158 feet S. and 236 feet W. of that corner. Applying the equidistant offset theory, this gives the Humble 31 a slight advantage in the N. E. corner of the M. G., which, however, is substantially offset by an advantage of M. G. No. 2 over Humble 31 immediately to the E. of the center of M. G. M. G. No. 2 and Humble No. 15 practically offset each other, there being an advantage of 4 feet in favor of the latter, which is probably entirely offset by the fact that it is only 45 feet N. of the M. G. S. E. corner; whereas, M. G. No. 2 is 158 feet N. of that corner. M. G. No. 2 has an advantage of 2 feet over Humble No. 11, and of 15 feet over Atlantic No. 7. Atlantic No. 4 has an advantage of 6 feet over M. G. No. 1, which in turn has an advantage of 6 feet over Humble No. 3, and of 10 feet over C. G. Glasscock No. 1. It will thus be seen that if there is any net advantage in favor of surrounding leases, it is trivial.

Appellee's right to the third well rests alone upon the relative positions of these wells, coupled with the fact that the water pressure is from the west, which gives wells to the east an advantage. This advantage, however, is a natural one, which would exist independently of any conservational regulation. Furthermore, the evidence shows that under proration, with the existing low allowable requiring shutting off the wells during a large portion of each day, any excess in drainage to the east due to this situation is thereby substantially neutralized—that is to say, that the reservoir pressure becomes normal again after the oil is withdrawn each day.

On the other hand, if M. G. No. 3, which is located 150 feet W. of the Humble lease and just 86 feet E. of M. G. No. 2, is permitted as an exception to rule 37, it would "upset the entire drainage picture," and give the M. G. lessee "a decided advantage on the east end of his lease over all those surrounding leases."

Appellee is entitled, and entitled only, to be accorded an equal opportunity with surrounding lessees to recover his fair share of the recoverable oil; or, stated differently, to recover the approximate amount of oil lying in place under his lease.

The proper test as laid down by this court in the Bass Case [Railroad Commission v. Bass (Tex. Civ. App.) 10 S.W. (2d) 586], which we are not aware has ever been questioned, is: " * * * whether, taking into consideration the area and outline of plaintiff's land, its general location, and the location of all its parts to the proven field, and the relative distance to the common property line of plaintiff's authorized wells and those authorized on adjoining tracts, the plaintiff would have an equal opportunity with adjoining leaseholders of developing and realizing for his leasehold."

It has been judicially determined by this court that the 660-330 feet spacing rule (37) in the East Texas field, "promulgated after an extensive hearing," was in effect an authoritative official finding by the commission that "wells in closer proximity producing equally would tend to create waste." Sun Oil Co. v. Railroad Commission (Tex. Civ. App.) 68 S.W.(2d) 609, affirmed (Tex. Com. App.) 84 S.W. (2d) 447.

The commission cannot arbitrarily grant exceptions to the rules it promulgates under its delegated powers. The exceptions must be defined with such reasonable certainty as the subject-matter dealt with will admit; and when so defined, they become the guides and criteria governing the commission in passing upon applications for exceptions to the rules. The exception here invoked, applied by the commission and upheld by the trial court, was to prevent confiscation of appellee's property. To sustain the commission's order and the trial court's judgment, a showing was essential that the additional well was necessary to effectuate that objective, which in this instance could only mean that it was necessary in order to accord the right inherent in him as owner of the property, to his fair share of the oil as defined above and in the Bass Case.

As already shown, the undisputed evidence negatives any substantial inequality or disparity between appellee's and the surrounding properties. The record therefore affords no basis for an exception to the rule, and the commission exceeded its powers in granting it. Sun Co. Case, above; Humble O. & R. Co. v. Railroad Commission (Tex. Civ. App.) 68 S.W.(2d)

622, affirmed (Tex. Sup.) 83 S.W.(2d) 935; Humble O. & R. Co. v. Railroad Commission. (Tex. Civ. App.) 68 S.W.(2d) 625; Smith v. Stewart (Tex. Civ. App.) 68 S.W.(2d) 627, affirmed (Tex. Sup.) 83 S.W.(2d) 945.

This conclusion is inevitable, independently of proration and of the other considerations hereinafter noted.

■ It was held in Brown v. Humble O. & R. Co. (Tex. Sup.) 83 S.W.(2d) 935 [affirming this court in Humble O. & R. Co. v. Railroad Commission (Tex. Civ. App.) 68 S.W.(2d) 622, above], that proration (the power of the commission to regulate the flow of wells) enabled the commission to "permit each owner to enjoy the opportunity fully to realize upon his estate by developing and recovering his oil and gas." Under this holding, any inequality or disparity requiring adjustment may be remedied through controlling the flow, without the necessity of granting exceptions to rule 37, the effect of which, almost invariably (at least in permitting additional wells upon a tract), produces a situation, as it unquestionably would in the instant case, requiring allowance of further drillings as exceptions to rule 37, by adjacent leaseholders. See Sun Oil Co. v. Gillespie (Tex. Civ. App.) 85 S.W.(2d) 652.

■ As above demonstrated, the only conceivable basis for the order under review lay in a presumed proper application of the direct and equidistant offset theory. On May 29, 1934, rule 37 as applied to the East Texas field was amended in a number of particulars. One of the changes reads: "The order entered by this Commission on August 30, 1933, commonly designated as the direct and equidistant offset order is hereby rescinded, annulled and shall be of no further force and effect."

This order constituted an official finding and determination by the commission that the offset theory was not properly adapted to conditions in the East Texas field, and eliminated it as a factor in the administration of rule 37 and exceptions thereunder.

The trial court's judgment is reversed, and judgment is here rendered in favor of appellant.

Reversed and rendered.