### MAGNOLIA PETROLEUM CO. v. RAILROAD COMMISSION OF TEXAS et al.

No. 8410.

Court of Civil Appeals of Texas. Austin.

April 8, 1936.

Rehearing Denied April 22, 1936.

Greenwood, Moody & Robertson, of Austin, for appellant.

Wm. McCraw, Atty. Gen., and Harry S. Pollard, Asst. Atty. Gen., for appellees.

McCLENDON, Chief Justice.

This is an oil well spacing (rule 37) case. The appeal is from a judgment refusing to set aside an order of the Railroad Commission which denied to the Magnolia Petroleum Company a permit to drill an eleventh (designated No. 10) well on the O. G. Grissom 84.12-acre lease in the East Texas oil field. The leasehold covers a rectangular strip approximately 3,457 feet long (east-west) and 1,060 feet wide (north-south). Well No. 10 was spaced 330 feet east of the west line and 304.8 feet south of the north line. It was 256 feet northwest of well No. 2, which is 454.5 feet east of west line and 523.2 feet south of the north line. Based upon the equidistant offset theory, there was a slight drainage (absent well No. 10) in the northwest corner of the lease by wells on adjoining leases. However, this was more than compensated for

by the advantage of other wells on the lease over those on adjoining leases. From the density (number of acres per well) viewpoint, the evidence shows: The density on this lease (8.42 acres per well) was greater than that of the adjacent leases [Atlantic Oil Production Co. v. Railroad Commission (Tex.Civ.App.) 85 S.W.(2d) 655 (error dis.)]; greater than that contemplated by rule 37 as applied to the East Texas field, which was one well to ten acres; but less than the general average density throughout the entire field, which was approximately one well to seven acres. There was also testimony analogous to that in Railroad Commission v. Marathon Oil Co. (Tex.Civ. App.) 89 S.W.(2d) 517 (error ref.), to the effect that the ultimate recovery from the field would be enhanced by increased density in drilling.

The basic contentions of the Magnolia Company may be reduced to the following three:

1. It was entitled as a matter of law to well No. 10, to prevent drainage of a portion of its lease in the northwest corner by wells on adjacent leases.

2. It was entitled as a matter of law to eleven wells on its lease in order to develop it to the average density of the East Texas field.

3. The additional well tended to decrease waste, and therefore to conserve the oil in the field in that its effect would be to increase the ultimate recovery from the field.

Each of these contentions has been denied by former adjudications of this court.

The right of each individual leaseholder extends no further than the opportunity to extract his fair share of the oil, measured by a reasonable approximation of the amount of oil in place under his leasehold. This right is satisfied when the drainage from his lease is offset by drainage by his wells from adjacent leases. Sun Oil Co. v. Gillespie (Tex.Civ.App.) 85 S.W.(2d) 652 (error dis.); Atlantic Case, supra; Edgar v. Stanolind Co. (Tex.Civ.App.) 90 S.W. (2d) 656 (error ref.). The situation in the Atlantic Case is almost identical with that here. In all three the principle is the same.

It would be manifestly impossible to sustain the second contention without abrogating the rule altogether. The rule as now in force is predicated upon a density of one well to each ten acres. If it were increased to one well to seven acres to satisfy the Magnolia's demand, a like increase would be required throughout the entire field. When this was an accomplished fact, the average density in the entire field would necessarily be raised by reason of exceptions necessarily granted in portions of the field to protect vested rights. This process would then have to be repeated until a density was reached represented by the shortest distance between any two wells in the field. This would abrogate the spacing rule altogether for all practical purposes. Whatever merit there may be in the density theory, it is not practical to apply it with absolute uniformity to an entire field without abrogating either the spacing rule or exceptions thereto.

The third contention was rejected in the Marathon Case above. See, also, concurring opinion in Falvey v. Simms Oil Co. (Tex.Civ.App.) 92 S.W.(2d) 292. It may not be amiss in this connection to direct attention to the fact that the commission in its order of February 4, 1936, clarified the views expressed in the quotation in the Marathon Case from its order of August 26, 1935, as follows:

"By this language the Commission did not mean and did not find from the evidence that the closer wells are drilled the greater will be the ultimate recovery of oil and gas from any given pool, but by such language only meant and found from the evidence that the more wells that are drilled in conformity with the spacing rules as applicable to the various fields in Texas the greater will be the ultimate recovery of oil and/or gas from any given pool.

"It was not then the intention and it is not now the intention of the Railroad Commission to abrogate or abandon any of the spacing rules now in effect and applicable to the various oil and gas fields in Texas, nor to militate against the fact basis on which the Commission's spacing rules are based."

The trial court's judgment is affirmed.