**TRAPP et al. v. ATLANTIC REFINING CO. et al.**

No. 9339.

Court of Civil Appeals of Texas. Austin.

March 10, 1943.

Rehearing Denied March 31, 1943.

Pollard & Lawrence and W. Dewey Lawrence, all of Tyler, for appellant M. E. Trapp.

Powell, Rauhut, & Gideon and John A. Rauhut, all of Austin, for appellee Sun Oil Co.

Black, Graves, & Stayton and John W. Stayton, all of Austin, for appellee Atlantic Refining Co.

Roy W. Johns, of Philadelphia, Pa., and Chas. B. Ellard and Martin Row, both of Dallas, for other appellees.

Joe S. Brown, of Houston and Stanley Hornsby, of Austin (Jno. E. Green, Jr., of Houston, of counsel), for Gulf Oil Corporation.

McCLENDON, Chief Justice.

Rule 37 case. The appeal is from a final judgment cancelling a permit to drill well No. 4 on a 7.88-acre lease in the East Texas oil field, granted as an exception to the rule "to prevent physical waste" only; and enjoining production thereunder. The suit was brought by Atlantic (Atlantic Refining Company) against permittees (Trapp and Blankenship) and the Commission (Railroad Commission). Sun (Sun Oil Company) and Gulf (Gulf Oil Company) intervened as parties plaintiff. The application was granted originally December 23, 1940. Rehearing was granted to Atlantic and Sun January 10, 1941, and the permit was denied February 28, 1941. Rehearing was granted to permittees March 28, 1941, and the final order granting the permit was passed May 13, 1941. From the orders granting permittees a rehearing and finally granting the permit, Commissioner Culberson dissented, filing a detailed statement of his reasons. Permittees filed a cross-ac-

tion against the Atlantic, seeking to enjoin production from two wells on an Atlantic lease adjoining the 7.88-acre lease on the north, on the ground that the two wells had been drilled at illegal locations. Upon motion of Atlantic this cross-action was severed from the suit to cancel the permit. Permittees and the Commission filed separate motions to dismiss Gulf's intervention on the ground that it did not have a justiciable or litigable interest in the suit. They also moved for stay of execution based upon a recommendation of the Petroleum Coordinator of National Defense. These motions were overruled.

No brief has been filed for the Commission. Permittees have briefed the case under 15 points which urge in substance the following contentions:

1. The Commission has given a practical construction to the exception to prevent waste by granting applications upon the more wells more ultimate oil recovery theory, which practical construction has become a part of the rule.

2. The field has been developed upon that theory, and not to apply it in the instant case would be violative as to permittees of the due process constitutional provisions.

3. Such practical construction and field development has rendered the rule "nugatory and purposeless."

4. Rule 37 is void in that the exceptions "to prevent confiscation" and "to prevent physical waste," do not furnish criteria of sufficient certainty from which to determine their meaning, but relegate that matter to the unbridled discretion of the Commission.

5. Appellees are not interested parties under Art. 6049c, § 8 Vernon's Ann.Civ. St., because they are in no way damaged by the well in question.

6. Gulf is not such interested party since its lease is over 600 feet from the well in suit.

7. Permittees' cross-action was improperly severed.

8. Their motion to stay execution was improperly overruled.

9. The validity of the permit was supported by substantial evidence.

The first four of these contentions were raised by special pleas in permittees' answer, to which special exceptions were sustained. All of them have been adjudicated adversely to permittees. We shall therefore refer, but briefly, to some of the apt decisions.

■ As to the first three of these contentions it has been consistently held that to grant a permit as a prevention of waste exception to the rule, upon the sole theory (supported by testimony of some experts) that the more wells that are drilled —that is the closer the spacing between wells—the greater will be the ultimate recovery of oil from the field, would in effect destroy the rule; and that the application of that theory would constitute an attack upon the rule itself which could only be made in a direct proceeding brought for that purpose, a proceeding in the nature of an appeal from an order granting a permit as an exception to the rule, constituting a collateral attack in that it challenged validity of the rule. In Railroad Comm. v. Marathon Oil Co., 89 S.W.2d 517, 519, error refused, a finding of the Commission of August 26, 1935, that "the more wells that are drilled the greater will be the ultimate recovery of oil or gas from any given pool" was urged in support of a permit upon that theory. This contention was rejected upon the holding that to admit it would in effect nullify the rule, which could not be done in a collateral attack. The opinion added:

"The commission has the power to modify, amend, or even abrogate the rule (37), whenever, in its judgment, this should be done in the interest of a proper administration of the conservation laws of the state. But until such action, or until the rule is set aside in a direct proceeding instituted for that purpose, it is the imperative duty of the courts to enforce it, notwithstanding any expression of doubt on the part of the commission as to its wisdom, propriety, or effectiveness to accomplish its objective."

Following this opinion the Commission on February 4, 1936, gave the following explanation of its above quoted finding of August 26, 1935:

"By this language the Commission did not mean and did not find from the evidence that the closer wells are drilled the greater will be the ultimate recovery of oil and gas from any given pool, but by such language only meant and found from the evidence that the more wells that are drilled in conformity with the spacing rules as applicable to the various fields in Texas the greater will be the ultimate recovery of oil and/or gas from any given pool.

"It was not then the intention and it is not now the intention of the Railroad Commission to abrogate or abandon any of the spacing rules now in effect and applicable to the various oil and gas fields in Texas, nor to militate against the fact basis on which the Commission's spacing rules are based." Magnolia Petroleum Co. v. Railroad Commission, Tex.Civ.App., 93 S.W.2d 587, 588.

Many other cases might be cited in which the same holding was made as that in the Marathon case. There are none to the contrary. The latest expression of the Supreme Court on the subject is found in the Trem Carr case (Railroad Comm. v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022) in which the "more wells more oil" theory was rejected.

■ Contention 4 was expressly rejected by the Supreme Court in the Trem Carr case in so far as concerns the prevention of waste exception, the criterion being whether appropriate underground conditions peculiar to the specific well, but not inhering in the field generally or in other sections of the field exist. The exception "to prevent confiscation of property" or as originally promulgated "to protect vested rights" (held synonymous terms in Nash v. Shell Petroleum Corp., Tex. Civ.App., 120 S.W.2d 522) has been uniformly upheld, beginning with the Bass case (Railroad Comm. v. Bass, Tex.Civ. App., 10 S.W.2d 589), the first Rule 37 case to reach an appellate court of this state. This exception, from the viewpoint of its definiteness, was discussed in Atlantic Oil Production Co. v. Railroad Comm., Tex.Civ.App., 85 S.W.2d 655. See points (3, 4) 85 S.W.2d at page 657, col. 2. The uniform holding has been that the criterion implicit in this exception is whether the well is necessary to protect the owner in his right to obtain his fair share (or the equivalent thereof) of the recoverable oil underlying his land. Both of these exceptions were discussed and upheld in Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73. Since the issue raised in this contention has been so conclusively adjudicated, its discussion as an original proposition is both unnecessary and undesirable.

■ As to contentions 5 and 6: Atlantic and Sun were owners of leases contiguous to the 7.88-acre lease. They were interested parties within the meaning of Art. 6049c, § 8, under express holding in the Trem Carr case and a number of prior

and subsequent decisions. There has been no decision to the contrary. It is immaterial, therefore, whether Gulf was an interested party, since a decision of that question, one way or the other, would not affect the result of the appeal. We will, therefore, not burden this opinion with a discussion of that issue.

■ We overrule the 7th contention upon the holding that the court did not abuse its discretion under Rule 174, Texas Rules of Civil Procedure, in severing the cross-action from this suit. The cross-action alleged; Atlantic wells Nos. 12 and 13 were drilled in 1935 at points distant 136 ft. and 138 ft. north respectively of permittees' north line under permits authorizing their drilling each 250 ft. north of said line. As a result Atlantic had been illegally draining oil from permittees' lease since 1935, resulting in $17,500 actual and $35,000 exemplary damages, for which they sued as well as to enjoin further production from the wells. We are unable to perceive in what way permittees' right to damages or to enjoin these wells could affect deleteriously their right to the permit in suit. Nor can we conceive of any advantage of trying that controversy in this suit. If the issue of confiscation were involved the presence of these wells as drilled would have bearing upon the question of drainage, but, instead of being a detriment, they would be an advantage to permittees' case, since their removal to the alleged proper locations or altogether would lessen any net drainage from their lease. But aside from this, the right to the permit must be determined by the factual situation existing at the time the order was made; and as these wells were then in existence, and their validity was not being contested the constituted an essential element in the factual picture upon which right to the instant permit rested. It is clear that no possible injury to permittees has accrued as a result of the severance, and the order of the trial court thereon should not be disturbed.

■ Upon contention 8: permittees' motion to stay execution was predicated upon § 1503.30 of Recommendation 47 of the Petroleum Coordinator for National Defense, issued April 21, 1942, the pertinent portion of which reads:

"No oil or gas well shall be abandoned unless and until such well is incapable of yielding a sufficient production of oil or gas, or both, to provide adequate compen-

sation for the labor employed in its operation, to meet maintenance and repair costs, and to pay such taxes as may be levied against it."

This Recommendation was amended May 20, 1942, as. follows: "The provisions of §§ 1503.30 to 1503.33, inclusive, of this chapter shall not affect the exercise of such discretion as the courts or the duly authorized regulatory body of any state may possess to enjoin the operation or compel the abandonment of illegally drilled oil or gas wells."

Whatever may have been the effect of the original Recommendation upon the well in issue, clearer language than that of the amendment excluding this well from the operation of the Recommendation, could hardly be employed.

■■ Upon contention 9 it is only necessary to point out that the evidence was conclusive that no unusual underground conditions which would warrant an exception to the rule on the ground of waste prevention existed, and the case is therefore controlled by the decision in the Trem Carr case, as well as those of many other cases of like import. Since the permit was granted "to prevent physical waste" only, the question of confiscation is not involved, and we pretermit its discussion. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73; Ward Oil Corp. v. Overton Refining Co., Tex.Civ.App., 131 S.W.2d 700, at page 702 on rehearing.

The trial court's judgment is affirmed.
Affirmed.