**TORCH OPERATING COMPANY,**
Appellant,

v.

**RAILROAD COMMISSION OF TEXAS and Goodrich Oil Company, Appellees.**

No. 3–93–538–CV.

Court of Appeals of Texas, Austin.

Aug. 31, 1994.

Rehearing Overruled Nov. 23, 1994.

Glenn E. Johnson; Graves, Dougherty, Hearon & Moody, Austin, for appellant.

Dan Morales, Atty. Gen., Priscilla Hubenak, Asst. Atty. Gen., Austin, for Railroad Com'n of Tex.

William Osborn, Philip F. Patman; Patman & Osborn, Austin, for Goodrich Oil Co.

Before POWERS, ABOUSSIE and JONES, JJ.

POWERS, Justice.

Torch Operating Company appeals from a judgment of the district court affirming a final order of the Texas Railroad Commission in a contested case in which Goodrich Oil Company was a party and an intervenor in the district-court suit. We will reverse the district-court judgment and the Commission order and remand the contested case to the Commission.

## THE CONTROVERSY

After completing a discovery gas well and another gas well in the Bammel, North (6,100' Cockfield) Field in Harris County, Kilroy Oil Company of Texas applied to the Commission for a hearing to establish temporary field rules for the field. Goodrich held operating rights under leases in the same field, but apparently the leaseholds did not touch Kilroy's. Consequently Kilroy did not identify Goodrich as an operator to be notified of the requested hearing. *See* 16 Tex.Admin.Code § 3.43(b) (1994).

Before the Commission established the temporary field rules, Goodrich applied to the Commission for a permit to drill its first well in the field. Because no field rules were applicable at the time, Goodrich's application requested the permit on the basis of the "statewide" density and spacing requirements, namely one well upon 40 acres located not less than 467 feet from a lease line and not less than 1,200 feet from another well. *See* 16 Tex.Admin.Code §§ 3.5(a), .37, .38 (1994). A short time later, the Commission established the temporary field rules requested by Kilroy, setting density and spacing requirements at one well per 640 acres, located not less than 1,867 feet from a lease line and not less than 3,735 feet from another well. Ten days later the Commission nevertheless issued a permit to Goodrich allowing it to drill under the "statewide" spacing requirements that authorized a much greater density of wells with lesser spacing minimums. Goodrich amended its application a few months later to change the surface site of the well it intended to drill. The Commission approved the amended application about twelve days later, based again on the "statewide" spacing rules. Goodrich completed its well. The Commission, however, refused to approve the well and declined to assign it an allowable because its location violated the spacing and density requirements of the recently established temporary field rules.

A few months later, Torch succeeded Kilroy as operator under the leases held previously by Kilroy. Torch discovered that Goodrich was producing gas without an assigned allowable. Torch's resulting complaint to the Commission initiated a contested case heard by the agency March 6, 1992. On May 18, 1992, the Commission ordered that the temporary field rules be made permanent. On November 18, 1992, the Commission issued its final order deciding the contested case initiated by Torch's complaint against Goodrich.

## THE COMMISSION'S FINAL ORDER

The Commission's final order rests upon findings of fact and conclusions of law which may be summarized as follows:

1. Goodrich's leasehold fell within the 673.211–acre pooled unit recorded by Kilroy, which failed to file with the Commission a report of the pooled unit.

2. Goodrich did not receive notice of Kilroy's application to establish temporary field rules for the Bammel, North (6,100' Cockfield) Field, nor did Goodrich appear at the hearing on such application.

3. When Goodrich filed its application for a drilling permit, the company had no notice that the Commission had established temporary field rules.

4. The Commission's rules, properly construed, required that Goodrich receive notice of Kilroy's application for a hearing to establish temporary field rules because Goodrich was a person "affected" by the application.

5. The temporary field rules were therefore "void as to Goodrich Oil Company for lack of notice."

6. The Goodrich well was, moreover, "a legally drilled and located well and is entitled to an assignment of an allowable from the date its proper documentation was filed with the Commission."

7. "The Goodrich well should be entitled to make up production, if capable, for the period in which it was shut-in."

The effect of the Commission's final order is this: two different sets of density and spacing requirements were applied to the same field, the Bammel, North (6,100' Cockfield) Field. It is obvious and conceded by Goodrich and the Commission that: (1) the Commission's decision does not rest upon the prevention of waste or the protection of correlative rights, but rather upon Goodrich's want of notice and the Commission's resulting conclusion that the field rules procured by Kilroy were "void as to Goodrich"; and (2) the final order we now review discriminates on its face against Torch by allowing Goodrich a much greater well density and closer spacing of wells, leaving the issue to be whether the discrimination is lawful or unlawful.

## DISCUSSION AND HOLDINGS

"The purposes of statutes and administrative orders fixing the location of wells with respect to property lines and other wells are to protect the rights of land or mineral owners by preventing net drainage between tracts, to prevent economic waste resulting from the drilling of unnecessary wells and to prevent physical waste which may be incident to close drilling." 1 W.L. Summers, *The Law of Oil and Gas* § 83, at 278 (1954). "The adoption of the spacing rule represents an economic decision that the density of development should be regulated and restricted, at least in part to prevent physical or economic waste from the drilling of wells

which are not reasonably necessary to drain a reservoir adequately." *Exxon Corp. v. Railroad Comm'n,* 571 S.W.2d 497, 501–02 (Tex.1978).

 The Commission has therefore established, in order to prevent waste and confiscation, the minimum spacing and density requirements spelled out in the agency's famous "Rule 37": one well per forty acres and minimum spacing distances of 467 feet from a property, lease, or subdivision line and 1,200 feet between wells. 16 Tex.Admin.Code § 3.37(a)(1)(b) (1994). The legal effect of this "statewide" rule may be avoided when the Commission determines that an *exception* thereto is necessary to prevent waste or the confiscation of property. *Id.* In addition, the Commission may *supplant* the "statewide" rule, in a particular field, by "field rules" or rules applicable only in the particular field, "for the purpose of preventing waste and preventing the confiscation of property...." *Id.* at § 3.37(d). Finally, the Commission may *amend* any field rule when necessary in the interests of property administration of the applicable statutes, including those that provide for the prevention of waste and confiscation of property. *Railroad Comm'n v. Marathon Oil Co.,* 89 S.W.2d 517, 519 (Tex.Civ.App.—Austin 1935, writ ref'd). In all events, however, any "field rules" promulgated by the Commission must be fair and impartial; and, while perfection is not required, the rules must be free of discrimination and confiscation as between different tracts of land in the same field and supported by a reasonable, actual, factual basis. *See Railroad Comm'n v. Rowan Oil Co.,* 259 S.W.2d 173, 177 (Tex.1953); *Gulf Land Co. v. Atlantic Ref. Co.,* 134 Tex. 59, 131 S.W.2d 73, 85 (1939).

The Commission's final order in the present case does not indicate that the agency decision rests on the relevant statutory factors indicated in the foregoing paragraph: the prevention of economic or physical waste or the prevention of confiscation. The order suggests instead that it rests solely on a ground entirely unrelated to those factors and purposes: Goodrich is not bound by the "field rules" solely because it did not receive

notice of the hearing at which those rules were adopted.

 In points of error one through four, Torch complains the Commission's final order is arbitrary and capricious. We believe the second point is well taken and need not discuss the remaining points of error.

 An agency decision is arbitrary when the final order fails to demonstrate a connection between the agency decision and the factors that are made relevant to that decision by the applicable statutes and regulations. *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 202 (Tex.1991); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *see generally Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Alfred C. Aman, Jr. & William T. Mayton, *Administrative Law* § 13.10.5 (West 1993).

The Commission's final order in the present case is arbitrary because it omits to demonstrate the required connection between the agency decision and the relevant statutory factors of drainage, economic waste, and physical waste. If those applicable factors require one well per 640 acres in the field, with minimum distances of 1,867 feet and 3,735 feet, it is difficult to comprehend how those factors also require, in the same field, one well per forty acres, with minimum spacing distances of 467 feet and 1,200 feet. It may be that an explanation exists, *in terms of the relevant statutory factors,* for the apparent discrimination between the two operators in the same field. The record does not suggest, however, what that explanation might be and does not suggest that the Commission made its final order and decision on that basis.

We therefore reverse the district-court judgment and the Commission's final order and remand the contested case to the agency. *See* Administrative Procedure Act, Tex. Gov't Code Ann. § 2001.174(2)(E), (F) (West 1994). Because we sustain Torch's second point of error, we need not discuss its remaining points of error.