## HUMBLE OIL & REFINING CO. v. RAILROAD COMMISSION et al.

### No. 8497.

Court of Civil Appeals of Texas. Austin.

Nov. 4, 1936.

Rehearing Denied Nov. 25, 1936.

Rex G. Baker and R. E. Seagler, both of Houston, and Powell, Wirtz, Rauhut, & Gideon, of Austin, for appellant.

Wm. C. McCraw, Atty. Gen., and Harry S. Pollard, Asst. Atty. Gen., for appellee Railroad Commission of Texas.

Toddie L. Wynne, and Carl L. Phinney, both of Dallas, for appellee American Liberty Oil Co.

BAUGH, Justice.

This is a rule 37 case. On May 10, 1934, the American Liberty Oil Company, owner of a lease on 7.38 acres of land in the East Texas oil field in Gregg county, Tex., on which it then had 5 producing wells, filed with the Railroad Commission its application for permits to drill 5 more wells on said tract. The adjacent lease owners were notified, a hearing was had, said application was denied as to 4 of such locations, but permit granted for 1 additional well, designated as well No. 6 on the attached map. The Humble, owner of a 59-acre lease to the west of said tract, appealed to the district court to set aside said permit. After a hearing on the merits, the trial court refused appellant the relief sought; hence this appeal.

At the time said permit was granted rule 37 in that field provided spacings of 660-330 feet. The well here involved, as well as all other wells on said tract, was granted as an exception to said rule to prevent confiscation of property. Appellant attacked said order of the Railroad Commission as unreasonable, arbitrary, and unjust on the grounds:

1. That the evidence conclusively showed that the 5 wells already drilled, without the additional well here involved, under the present proration rules, in said field would, during the life of the field, produce more oil from said tract than the original amount of oil in place under it.

2. That taking into consideration a surrounding adjacent area eight times the size of the American Liberty Oil Company's tract, said company's tract with 5 wells thereon, was drilled to a greater density than such surrounding area.

3. That whatever disadvantage said tract suffered by drainage of wells in close proximity to it on the east, was compensated in drainage through the 5 wells on said tract from the adjacent lands on the west.

Other than the documentary evidence introduced, including plats and maps of said area showing the number and location of wells in said area, only one witness testified. He was an employee and geologist of the appellant Humble Oil & Refining Company. His testimony on direct examination was sufficient to sustain the contentions made by appellant. On cross-examination it was shown, however, that the tract of land here involved was near the edge of the East Texas pool; that the thickness of the oil-bearing sand diminished towards the east and increased towards the west; that as such sand became thinner the area drained by a well diminished; and that all of the wells on this tract were prorated as marginal wells. Under these facts and circumstances, and in the

light of the testimony as to the porosity of the oil-bearing sands in that area which permitted free movement of the oil therein, and the decreasing thickness of the oil sands to the east of this tract, we think the Railroad Commission and the trial court were authorized, with the maps before them showing the number and location of wells, to draw their own factual conclusions as to drainage and were not conclusively bound by the expert opinion of the employee of the appellant as to such drainage.

The attached map together with other maps in evidence show the following:

37), are located 9 additional wells, at an average distance from said boundaries of approximately 252 feet; that the average distance of these 16 wells to the east and south from the boundaries of said tract is approximately 250 feet. To the west and north of said tract there are shown from the maps in evidence to be 6 wells less than 330 feet from the property line of said tract. Well No. 4 of the American Liberty Oil Company shown on the attached map is located 400 feet from the north point of said 7.38-acre tract. The area in which well No. 6 thereon, the one here in controversy, is located, is shown to have 6 wells surround-

That there are located to the east of the American Liberty Oil Company's 7.38-acre lease, within 100 feet of its property line, 7 wells at an average distance from said line of approximately 82 feet; that to the east and south of said tract, and less than the 330 feet from the boundaries thereof (the minimum distance prescribed by rule

ing same on the east, north, and west located at distances of less than 330 feet from its boundary lines. While it had no bearing upon the hearing before the Railroad Commission, and was not entitled to consideration by the trial court, the evidence showed that, since the granting of the permit here involved, two additional wells have

been authorized and drilled in the area immediately to the north of this tract (locations Nos. 17 and 3 indicated on the map), well No. 17 being only 56 feet from the most northerly point of said tract.

Appellant's contention on the density theory,—that is, taking an area eight times the size of American Liberty Oil Company's tract, and radiating from the center thereof as shown by the circle on the attached map—is that the surrounding area of 60 acres is drilled to a density of one well to each 1.82 acres; that 5 wells on the American Liberty Oil Company's tract gives it a density of one well to approximately each 1.5 acres, and thereby an advantage over surrounding tracts; and that, if well No. 6 be permitted, this density would be increased to one well to each 1.23 acres. This contention, however, ignores the fact that the most densely drilled area in such larger tract is that immediately surrounding the 7.38-acre tract in question, there being as above indicated 22 wells, not including those drilled subsequent to the date said permit was granted, surrounding same, all located less than 330 feet from its boundary lines.

That the conditions presented, under the conservation rules of the Railroad Commission, are causing waste of the natural resources is apparent. Whether the Railroad Commission by prorating the production of the various wells could, as appellant urges, reduce such waste and prevent confiscation as to this particular tract without the drilling of well No. 6 thereon is not necessary for us to determine. This for the reason that the evidence showed that all of these wells were classed as marginal wells, not regulated with reference to their potential production, but all given the same allowable per day.

In view of all the facts and circumstances shown, and that the wells to the west of the tract here involved would, as the thickness of the oil-bearing sands increased, drain larger areas than wells on this tract, we are not prepared to say that the order of the commission, upheld by the trial court, granting said Oil Company a permit for another well to protect its property from confiscation, and to give it a fair opportunity to recover its fair share of the oil in place beneath its lease, was so unreasonable and arbitrary that it should be set aside.

No new issues of law are involved in this case, and the principles controlling it have been so repeatedly discussed by this court that they need not be repeated here.

For the reasons stated and under the facts shown, the judgment of the trial court is affirmed.