**SHELL OIL CO., Inc., v. RAILROAD COMMISSION et al.**

No. 8932.

Court of Civil Appeals of Texas. Austin.

Oct. 18, 1939.

Rehearing Denied Nov. 22, 1939.

A. E. Groff and R. H. Whilden, both of Houston, and Greenwood, Moody & Robertson, of Austin, for appellant.

Gerald C. Mann, Atty. Gen., and Ed Roy Simmons, Asst. Atty. Gen., for appellee Railroad Commission.

A. D. Cochran, of Okmulgee, Okl., and Willis E. Gresham, of Austin, for appellee Kingwood Oil Co.

H. P. Smead and Earl Roberts, both of Longview, for appellee Ketal Oil Co.

BAUGH, Justice.

This is a Rule 37 case. The Shell sued to set aside a permit granted by the Railroad Commission to the Kingwood Oil Company on May 4, 1937, to drill well No. 11 on its 30-acre lease in the fairway of the East Texas field in Gregg County, as an exception to Rule 37 to prevent confiscation of property. Trial was to the court and at the close of plaintiff's evidence, upon motion made, judgment rendered for the defendants; hence this appeal.

The issue of waste is not involved. While other contentions are made by appellant which will be hereinafter discussed, the controlling question presented is whether there was substantial evidence before the Railroad Commission to sustain its order on the ground that such well was needed to prevent confiscation of permittee's (Kingwood Oil Company) property. We have reached the conclusion that there was, and that the trial court's judgment should be affirmed.

The attached map, introduced by the Shell, discloses the general situation presented to the Railroad Commission at the time the permit was granted. The well involved is near the N. E. corner of the Kingwood 30-acre tract. The eight times area, or 240 acres, surrounding this tract is delineated both by a circle and a polygon. It is not controverted that this area is one of the best producing parts of the field; that the potentials, underground conditions, bottom hole pressure, sand thickness, and daily allowable per well are practically the same over the area shown on the attached map. It is the contention of the Shell that if all the wells on the eight times area, excluding the Kingwood 30-acre tract, be considered, as shown by the circle (probably the most accurate method of testing drainage), there are 61 wells, or an average density on the 240 acres of 3.94 acres per well; that the Kingwood tract with 11 wells, not including the well in question, has a density of 2.73 acres per well, thus giving the Kingwood tract a density advantage over the surrounding eight times area without the additional well. And further, that any drainage from the Kingwood tract by wells to the west, northwest, north, and northeast was compensated by drainage to it by its own wells to the east and south.

■ Consideration of the eight times area surrounding a given tract has frequently been resorted to in determining the issue of drainage, or confiscation, and in determining whether a leaseholder has been given a fair opportunity to recover his fair share of oil originally in place beneath his tract. But it manifestly cannot be taken as a conclusive criterion. Where the tract involved is small, and the surrounding eight times area is developed by reasonably uniform spacing of wells over the entire area, such a criterion may be reasonably accurate. But where the tract taken as a basis of comparison is of such size and dimensions that the outer boundaries of such eight times area are so far removed from the boundaries of the tract involved that the outlying wells in the eight times area exert no drainage influence on such tract, then the average density of the whole may have little bearing on the question of drainage of the particular tract. That issue may then best be determined, not by the average density of the whole, but by the number and proximity of wells immediately surrounding the tract in question. This, we think, is clearly demonstrated in the instant case.

■ Taking the circular eight times area and excluding the Kingwood 30-acre tract, a diameter drawn east and west shows the south half of such circle to contain 23 wells; and the north half to contain 38 wells. And, as above stated, drainage from the Kingwood, the underground conditions conceded to be uniform in the area, was necessarily affected by the number and proximity of wells to the Kingwood's boundaries. The 330-660-foot spacings provided in Rule 37 manifestly imply that a well will drain oil at least 330 feet. In the Stanolind Oil & Gas Company v. Midas Oil Co., Tex.Civ.App., 123 S.W.2d 911, cited by appellant in support of its drainage compensation contention, it was shown that in an area in the field very similar to the one here involved, tests disclosed that a key well at open flow, with surrounding wells closed, affected bottom hole pressure of surrounding wells from 1,000 to 1,500 feet away from it. It is not controverted, and the proof, as the map demonstrates, clearly shows that northeast, north, and northwest of the Kingwood, and within drainage distance of it, there is a much greater density of wells than on the Kingwood tract. On the west, not only were the three Kingwood wells offset by 3 wells on the adjacent narrow 7-acre tract; but those 3 offset wells were in turn also offset by 3 other wells, making 6 wells on the west of the Kingwood within 330 feet of its boundary.

■ On the question of compensatory drainage to the Kingwood on the south and east, while a petroleum engineer for the Shell did testify that there was drainage to the Kingwood on these sides, the record shows, and the attached map [1] demonstrates, that every Kingwood well on these sides of its tract was definitely offset by wells on the adjacent leases, its well No. 4 in the southeast corner being offset by 2 wells, 1 on the Shell lease and 1 on the Gulf. Under these circumstances and conditions the Railroad Commission could manifestly conclude either that there was no drainage to the Kingwood on the south and east, or that if so it was negligible; and not sufficient to compensate the Kingwood for the drainage from its tract on the north and

---

1 See page 794.

west; and that it was therefore entitled to an additional well in the area being drained to protect it. Consequently, there was substantial evidence before the Commission to sustain its order on this ground. See Humble Oil & Ref. Co. v. Railroad Commission, Tex.Civ.App., 99 S.W.2d 401; Gulf Land Co. v. Atlantic Ref. Co., Tex. Sup., 131 S.W.2d 73.

Appellant next asserts error of the trial court in sustaining said permit on the ground that pleadings of the appellee Kingwood Oil Company, and the evidence upon the trial, presented a different fact situation from that presented to the Commission. This on the ground that in its application the Kingwood represented to the Commission that the Ketal Oil Company's well No. 2 was located 75 feet and the Kingwood No. 2 well 225 feet from the common boundary line between these two tracts; whereas on the trial a dispute was presented as to the true location of such boundary line, or that in any event it was shown to be 117 feet south of the Ketal well, or 42 feet farther than represented to the Commission, thus materially affecting the relative distances of wells to the north from the Kingwood's tract, and consequently the issue of drainage in that direction. This contention is not sustained. The Railroad Commission had no authority to determine a boundary dispute, if such there was, and the district court of Travis County did not have venue of such issue. In any event, in its second motion for a rehearing filed with the Commission, the Shell alleged that the distances shown in the Kingwood's application were erroneous, and that the common boundary line was in fact located 117 feet, instead of 75 feet, south of Ketal's well No. 2. The order granting the permit did not fix its location at 75 feet south of the Kingwood north line, but authorized it as an equidistant offset to Ketal's No. 2. In passing upon Shell's second motion for rehearing, the Railroad Commission consequently had before them the facts as to the true location of this boundary line, that is, that it was in fact located 42 feet south of where Kingwood's application for its additional well No. 11 showed it to be, and in denying such motion manifestly concluded that this fact did not materially affect the issue of drainage in that area, and that Kingwood was entitled to the additional well as a direct offset to Ketal's No. 2 in either case. The fact that making it an equidistant offset to the Ketal No. 2 would re-

quire it thus to be moved a little farther south and closer to the Kingwood No. 2 than would have been required had such boundary line been only 75 feet instead of 117 feet south of the Ketal No. 2, does not materially change the general picture. Nor did locating said well 117 feet south of such boundary constitute any violation of the Commission's order as to location, but rather a compliance with it under the facts presented to the Commission by the Shell itself. In overruling the Shell's second motion showing that the boundary line was in fact 117 feet from the Ketal's well, the Commission, notwithstanding this fact, permitted its order to stand. Consequently the location of the well 117 feet from the common boundary line was required by the order of the Commission.

Appellant also contends that the court erred in sustaining the Ketal Oil Company's plea in abatement and dismissing it from the suit. There was no error in this. The Ketal, owner of a 1.87-acre tract adjoining the Kingwood on the north, appeared before the Commission and, along with the Shell and others, protested the granting of the permit here attacked; but declined to join the Shell, at its request, in the suit to set it aside. The Shell thereupon made it a party defendant, alleging collusion between it and the Kingwood, and in effect a fraud upon the Commission on the boundary issue in that after the Kingwood had obtained its permit for well No. 11, the Ketal would then seek a second well on its 1.87-acre lease.

It is now settled that the only necessary defendant to a suit to set aside an order of the Railroad Commission is the Commission itself. Magnolia Pet. Co. v. Edgar, Tex.Civ.App., 62 S.W.2d 359, writ refused. Others whose interests are directly affected may be proper parties, but their joinder usually rests in the sound discretion of the trial court and unless palpable abuse is shown, its action thereon will not be revised. 32 Tex.Jur., § 21, p. 34.

It is clear, we think, that the Ketal had no direct interest in the instant suit, if any interest at all. It was not a party to the permit, no relief was sought against it in this suit, and none could have been decreed in the judgment. While it could have intervened, it was not required, nor did it choose, to do so. The sole issue here involved was the validity of the permit granted to the Kingwood. If such permit were procured through collusion by the King-

wood with others, this was but an evidentiary issue, and the Shell was entitled to show these facts upon the trial, whether others charged with such collusion were parties to the suit or not. Any application for a permit for an additional well which the Ketal had made, or might make, would be a separate and distinct controversy, and subject to being resisted or defeated as against the Ketal on the grounds sought to be urged in the instant case. The Shell had no cause of action against the Ketal Oil Company by virtue of the facts alleged, and neither sought nor could have been granted any relief against it in the instant suit. Consequently the Ketal should not be required to remain a party to, and defend against, a suit between other parties in which it had no justiciable interest, and no judgment could have been rendered against it. United States Fidelity & Guaranty Co. v. Fossati, 97 Tex. 497, 80 S.W. 74; 32 Tex.Jur., § 58, p. 92. The trial court did not err, therefore, in dismissing the Ketal Oil Company from the suit.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.