## HUMBLE OIL & REFINING CO. v. FLANAGAN et al.

### No. 9097.

Court of Civil Appeals of Texas. Austin.

Oct. 14, 1942.

Rehearings Denied Nov. 4, 1942.

Rex G. Baker, of Houston, and J. A. Rauhut and Powell, Rauhut & Gideon, all of Austin, for appellant.

Gerald C. Mann, Atty. Gen., and James L. Noel, Tom D. Rowell, Jr., Ed Roy Simmons, Fagan Dickson, and James D. Smullen, Asst. Attys. Gen., for appellee Railroad Commission of Texas.

Wheeler & Wheeler, of Austin, for appellee M. T. Flanagan.

McCLENDON, Chief Justice.

Rule 37 case. The appeal is from a final judgment upholding a permit to drill a well upon a .42-acre tract voluntarily segregated by lease of a 57.35-acre tract out of a 57.77-acre tract in the East Texas Oil Field. The well had been drilled under a prior permit which was cancelled by district court decree affirmed by this court in Railroad Comm. v. Humble Oil & Refining Co., Tex.Civ.App., 123 S.W.2d 423, (error dismissed, correct judgment), temporary injunction against production having been previously granted by this court in Humble Oil & Refining Co. v. Railroad Comm., Tex.Civ.App., 99 S.W.2d 1052, error refused.

The present permit was granted to prevent confiscation, and the question of waste is not in issue. See Railroad Comm. v. Shell Oil Co., Tex.Civ.App., 165 S.W.2d 503, for authorities on this point.

At the outset the question is presented whether the prior judgment is res judicata of the right to the permit, absent a showing of changed conditions occurring between the dates of the two permits, which would warrant granting the second permit. The former suit was tried after the Century decision (Railroad Comm. v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W. 2d 967) and prior to the Atlantic decision (Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73) upon the theory that the right attaching to the entire 57.77 a. tract for an additional well was involved, although the permit was applied for and granted to protect only the .42 a. tract. The respective contentions in this regard are:

Of appellant: That the former judgment is res judicata of the rights of the parties as of the date of the first permit, because the suit was tried, judgment rendered and upheld upon the theory that the rights of the entire 57.77 a. tract were involved, and the appeal was expressly decided upon that issue and upon the holding that the 57.77 a. tract was as a matter of law not entitled to an additional protective well. The Century decision was cited as the basis of this holding.

Of appellees: That the former judgment is not res judicata of rights as of the date of the first permit, for the reason that the 57.77 a. tract was not involved in that permit order (Railroad Comm. v. Shell Oil Co., above), and rights predicated upon that tract could not be adjudicated in that case. See Humble Oil and Refining Co. v. Potter, Tex.Civ.App., 143 S.W.2d 135, and Railroad Comm. v. Miller, Tex.Civ.App., 165 S.W.2d 504.

■ After careful consideration of the statement of facts we have reached the conclusion that the permit cannot be supported as an exception to Rule 37 to protect the vested rights of the 57.77 a. tract, as they existed at the permit order date; and this independently of the prior decision. We, therefore, find it unnecessary to decide the issue of res judicata.

We refer to our former opinion (123 S. W.2d 423) for a full statement of the evidence showing the conditions with reference to the 57.77 a. tract at the time of the first permit order. The only change in conditions occurring subsequently to that order which has any bearing upon the issue of confiscation, consisted in the drilling of additional wells on the 57.77 a. tract and on tracts in the eight times circular and rectangular surrounding areas. The respective densities and daily per acre allowables at the time of the instant permit order were:

| | Average Density | Daily Allowable Per Acre (bbls) |
|---|---|---|
| Circular eight times area around Johnston 57.77 acres | 5.64 | 3.573 |
| Rectangular eight times area around Johnston 57.77 acres | 5.64 | 3.575 |
| Average of all leases adjoining Johnston 57.77 acres | 5.45 | 3.70 |
| Johnston 57.77 acres without Flanagan well | 5.25 | 3.83 |
| Johnston 57.77 acres with Flanagan well | 4.81 | 4.18 |
| (Humble's 57.35 acre portion | 5.21 | 3.85 |
| (Flanagan's .42 acre portion | .42 | 48.57 |

It therefore appears that from the viewpoint of density and daily allowable the 57.77 a. tract had a decided advantage over the other lands in the eight times areas; and was therefore not entitled to an additional protective well.

The only other factor affecting the issue of confiscation was the situation with reference to compensatory offset drainage. Upon this issue the evidence is without dispute that all wells within offsetting distance of the west, south and east lines of the 57.77 a. tract were adequately offset by wells on the 57.77 a. tract and that as to said lines there was no excess drainage from the 57.77 a. tract. Consequently, there was no necessity for or right to compensating offset wells in this regard.

The only evidence upon which any additional compensatory offset well upon any portion of the 57.77 a. tract might under any theory be supported, was the testimony of appellee Flanagan's (permittee's) witness Gordon Griffin. Without attempting an analysis of the validity of his conclusions as tested by the admitted physical facts upon which they were based; but assuming, arguendo, that those conclusions may reasonably be deduced from those physical facts; the effect of those conclusions was that due to the location of wells to the N. W., N., and N. E. of the 57.77 a. tract a compensatory offset well was needed near its N. E. corner and perhaps another such well near its N. W. corner. The evidence upon this situation was substantially as follows:

The .42 a. tract abutted on the east line of the Humble 57.35 a. lease comprising the remainder of the 57.77 a. tract. The Humble was quadrilateral in form, its

east line being 1695.2 feet long. The .42 a. tract was triangular in form, its north line being 131 feet long, and its east and west lines coming to a point to the south on the 57.77 a. tract's east line. To the east was the McFarland lease, whose west line and corners were coincident with the east line and corners of the 57.35 a. Humble lease, except that the .42 a. tract jutted out from the Humble lease into the McFarland lease. The north line of the .42 a. tract was well below the north half of the Humble east line. Thus the .42 a. tract, at its nearest point, was approximately 1,000 feet south of N. E. corner of the 57.77 a. tract and several hundred feet more distant from its N. W. corner. Humble well No. 5 and McFarland well No. 7 to the west and east, respectively, of the .42 a. tract, were offsetting wells. These wells were so located that No. 7 had a slight advantage of drainage off of the eastern tip of the .42 a. triangle, but this was more than compensated by the advantage of the No. 5 well to the north of the .42 a. triangle. There was therefore no need for a compensating offset well at this point. The only effect of allowing the .42 a. well would be to require additional compensating offset wells on both the McFarland and Humble leases, thus upsetting the drilling pattern in this locality and create a local more densely drilled area than that prevailing generally in this section of the field. This was conceded by Griffin on cross-examination.

Griffin further conceded that the .42 a. tract well would not relieve the situation he testified to in the N. E. and N. W. corners of the 57.77 a. tract, but would leave that situation just as it was before; that the only way to relieve that situation would be to drill compensatory offset wells in those corners.

The conclusion would seem ineluctable that a permit on the .42 a. tract could not be justified by a showing of need for compensatory offset wells in the north corners of the 57.77 a. tract, it conclusively appearing that a well so located would not relieve the inequality in the north corners but would leave that situation the same as it was before.

■ Much of Griffin's testimony was devoted to his theory that a more intensive drilling pattern was required throughout the western portion of the field (in which this section is located), due to water encroachment. This testimony, however, had no bearing on the issue of confiscation. Furthermore, it was in no essential respect different from that in the Trem Carr case (Railroad Comm. v. Shell Oil Co., Tex.Sup., 161 S.W.2d 1022) ; and that in several recent decisions by this court. This theory, as a basis for additional drilling, was held untenable in the Trem Carr and later cases.

■ The permit in issue is cancelled, and production thereunder permanently enjoined.

Permit cancelled; production thereunder enjoined.