**MARINE PRODUCTION CO. et al. v. SHELL OIL CO., Inc.**

No. 9249.

Court of Civil Appeals of Texas. Austin.

Oct. 21, 1942.

Rehearing Denied Nov. 18, 1942.

W. Edward Lee, of Tyler, for appellant Marine Production Co.

Gerald C. Mann, Atty. Gen., and E. R. Simmons, Tom D. Rowell, Jr., James D. Smullen, and Fagan Dickson, Asst. Attys. Gen., for appellant Railroad Commission.

R. H. Whilden, of Houston, and Dan Moody and J. B. Robertson, both of Austin, for appellee.

McCLENDON, Justice.

Rule 37 case. The appeal is from a final judgment cancelling an order which granted a permit to drill two additional wells (Nos. 6 and 7) on the Marine tract in the East Texas Oil Field; and enjoining production thereunder. The wells had been drilled under a prior order which was cancelled by this court in Shell Petroleum Corp. v. Railroad Comm., 137 S.W.2d 797. The prior permit was granted to prevent confiscation only; the present to prevent both confiscation and waste. The Marine had been voluntarily segregated from the Iron Rock tract of 2.014 acres. The north line of the Marine was in dispute which affected .81 acre. The balance of the Marine was 9.305 acres. So that the greatest area contended for of the combined Marine and Iron Rock was approximately 12 acres. The Marine had 5 producing wells (other than Nos. 6 and 7) and the Iron Rock 2. It was adjudicated in the former suit that the Marine already had a net drainage advantage over surrounding leases and was not entitled to wells 6 and 7 to prevent confiscation; and this, whether the area considered be the 9.305 acres, or the added .81 acre, or the combined Marine and Iron Rock of 12 acres.

Upon the issue of confiscation the evidence showed that the change in conditions between the two permit orders did not substantially change the situation of the Marine with reference to comparative density and compensatory offset drainage, the only factors affecting this issue. The prior adjudication is therefore res judicata of this issue.

With the exception noted below the evidence upon the issue of waste was of the same general character as that in the Trem Carr case, Railroad Comm. v. Shell Oil Co., Tex.Civ.App., 154 S.W.2d 507, affirmed Tex.Sup., 161 S.W.2d 1022. In fact the .67 acre Trem Carr tract adjoins the Marine on the west, and the Marine well No. 7 was originally granted as a direct equidistant offset to the Trem Carr well. See our former opinion wherein the Trem Carr well is designated the Ida Richey.

■ The evidence showed that: The upper surface of the Woodbine (the oil producing sand) stratum was very irregular throughout this section of the field, varying in below sea level depth from a high of –3203 (feet) to a low of –3245. Whether this irregularity was in the sand proper or merely in a thick layer of shale in the upper portion of the stratum is not clear. The difference is unimportant in the view we take of the issue. Extending across the center of the Marine from east to west was an area in which the top elevation varied from –3203 to –3207. The waste theory in this regard was predicated upon the assumption that to prevent ultimate trapping of oil in such high spots, wells drilled into them would be essential. Whatever validity may attach to this theory, however, it has no application to the permit in issue for the reason that the Marine already has three wells in this high area, one each at –3203, –3206, and –3207 elevations; and besides, wells 6 and 7 are not located in this high spot or in its immediate vicinity, but in very low spots; that of 7 being at –3245 and of 6 at –3235. Furthermore, the appearance of these high spots was usual throughout this area of the field, two others appearing in the eight times surrounding area. It was therefore not an unusual condition which would call for an exception to a general rule. In this same connection it is interesting to note that knowledge of the top elevation of the stratum is ascertainable only by actual drilling. Consequently, it could not be known in advance whether a high, low or medium spot lay beneath any designated location. For this reason this particular theory of waste prevention (even if otherwise valid) is incapable of practical administration, since exceptions to the spacing rule must be based upon actually known or ascertainable conditions at the time the Commission acts, and not upon the bare possibility that conditions warranting the exception might later develop or come to light.

■ The Marine has urged an additional point in which it is not joined by the Commission: that the judgment must be reversed because the order in issue was not formally introduced in evidence. This point was not called to the attention of the judge or adverse counsel in the trial court, but is raised for the first time in the Marine's brief. It is manifest that the case was fully developed in the trial court, and the contents of the permit order fully appeared. With the exception of this order, the entire record before the Commission was introduced, which included the application, the evidence before the examiner, his findings, the motion for new trial, and the order overruling it. The lease was shown to be the same as that in the former suit, and the well locations the same. It was generally conceded throughout the trial that the permit was granted to prevent confiscation and waste, and the case was tried on that theory. Rule 37 provided for no other exception. It therefore conclusively appears that no possible prejudice to the Marine has accrued by virtue of the failure to formally introduce the order. New Rule 434, Texas Rules of Civil Procedure brings forward former C. C.A. Rule 62a, thus placing it on a parity with former procedural statutes brought forward in the new rules. That rule provides "that no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court." It is apparent that the only purpose which sustaining this point could subserve, would be the advantages accruing to the Marine from the further delay of shutting off the wells incident to a reversal and new trial; thereby violating both the letter (Rule 434) and the spirit (Rule 1) of the new rules.

The trial court's judgment is affirmed.