BYRD et al. v. SHELL OIL CO., Inc.

No. 11392.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 16, 1944.

Rehearing Denied March 16, 1944.

Gerald C. Mann, of Dallas, E. R. Simmons, of Austin, and Neal Neece, of Dallas, for appellants.

R. H. Whilden, of Houston, Dan Moody and J. B. Robertson, both of Austin, for appellee.

MURRAY, Justice.

This is a Rule 37 case. D. H. Byrd applied to the Railroad Commission of Texas for and was granted a permit to drill a sixth well upon a 9.71-acre tract in the East Texas Oil Field, under the exception provided for in Rule 37, on the allegation that same was necessary to prevent confiscation of property and physical waste. Byrd in fact applied for a permit to drill a third well on a five-acre tract, but as such tract was a voluntary subdivision of the 9.71-acre tract such application must be regarded as an application to drill a sixth well upon the 9.71 acre tract. The Shell Oil Company, Incorporated, filed suit in the District Court of Travis County to test the validity of the permit, as provided for in Article 6049c, § 8, Vernon's Ann.Civ.Stats. The trial court cancelled the permit and Byrd and the Railroad Commission have appealed.

It is conceded that the 9.71-acre tract has an advantage over the eight times area surrounding it, as to number of wells, of almost two to one, and that the underground conditions, that is, sand thickness, porosity, permeability, potentials, etc., were substantially uniform. Therefore, there can be no question as to waste. In fact, appellants only attempt to uphold the action of the Commission in granting the permit upon the ground of confiscation of property.

Appellant Byrd's exact contention is that to the east of his tract is the townsite of Kilgore and this townsite is very densely drilled to the extent, in some instances, of twenty-seven wells per acre, which has produced a low pressure area, causing the water drive from west to east to increase and that the wells on his tract will be drowned out before they will have produced a quantity of oil equal to the amount which originally underlay his tract. The Kilgore townsite is about three-fourths of a mile

from the Byrd tract. It is further shown that this condition is true of the entire segment of the field which lies between Kilgore and the west edge of the field.

We are of the opinion that the Commission improperly granted this permit to Byrd. If Byrd drills this sixth well on the 9.71-acre tract, then he would clearly be draining oil from his neighbors, who would also be entitled to permits to drill additional wells to prevent drainage from their lands. This process presumably would be kept up until the entire segment from Kilgore to the western edge of the field was drilled to the same density as the townsite. Such a program would be a very wasteful and unscientific method of developing this entire segment of the East Texas Oil Field and, as shown by the evidence, would ultimately result in the 9.71-acre tract producing less oil than it will produce under conditions as they now exist.

We feel that what was said in Railroad Commission v. Shell Oil Co. (Trem Carr), 139 Tex. 66, 161 S.W.2d 1022, 1026, settles this case. We quote:

" * * * In order to be valid a discrimination between persons must have a reasonable basis in fact. There must be some factual basis for classifying some applicants as subject to the general spacing provisions of the rule and other applicants as within the exception. This reasonable basis can only be a showing of unusual conditions peculiar to the area where the well is sought to be drilled—not testimony that would be equally applicable to any other part of the field. Therefore, in order to sustain the validity of the rule we must give it the construction that the exception is to be granted only upon a showing of unusual conditions."

It is true that the Trem Carr case is a waste case and this a confiscation case, but we can see no reason why the above rule would apply in the one and not in the other.

This case was originally appealed to the Austin Court of Civil Appeals, but when the members of that Court disagreed as to the proper disposition of the case the Supreme Court transferred it here. We have before us a tentative opinion written by Justice Blair of that Court, holding that the permit was properly granted by the Commission, and another tentative opinion, by Chief Justice McClendon of that Court, holding that the permit was improperly granted. Both of these opinions are full and exhaustive

and contain an excellent discussion of the law from their respective viewpoints. After much consideration, we are inclined to agree with the views of Chief Justice McClendon, which we set out below, as follows, to-wit:

The question may be stated as follows: When there is no excess or non-compensated net drainage from a tract to adjacent tracts, may the Commission properly grant a permit to drill an additional well on such tract as an exception to Rule 37 to prevent confiscation, in order to enable the tract to recover oil of which it has been and is being deprived by reason of a situation (here intensive drilling in a townsite to the east) which affects alike the tract in question, the eight times area, and a large segment of the oil field? The facts are without material dispute. Under the holding in the Trem Carr case the permit could not be supported if it were granted to prevent waste. In this particular regard there is no distinction in principle between waste prevention and confiscation prevention. The basis of this holding of the Trem Carr case (which accorded with prior decisions) is that it is essential to the validity of the rule, and a contrary holding would destroy the rule. The opinion, on this point, reads:

"If * * * an exception to prevent waste may be granted on the basis of testimony that is equally applicable to any other field or *part of a field* subject to the rule— as in the case where the 'more wells, more oil' theory is relied upon—then there is actually no basis in fact for a distinction between cases subject to the general provisions of the rule and cases within the exceptions therein, and the Commission has no real guide or standard at all."

This holding has been followed in every subsequent case in which it has been involved, and has been applied not only to those cases in which the situation professedly sought to be remedied existed throughout the entire field (more wells, more oil theory), but to those in which such situations affected only a part of the field, sometimes only the eight times area, but was not limited to the tract in issue. In the following cases writs of error were refused: Letwin v. Gulf Oil Corp., Tex.Civ.App., 164 S.W.2d 234, 236, where "the underground conditions surrounding this well and the area eight times the size of the tract involved were similar"; Railroad Comm. v. Shell, Tex.Civ.App., 164 S.W.2d 773; Rail-

road Comm. v. Shell, Tex.Civ.App., 165 S.W.2d 502, where the same conditions prevailed in the eight times area; Trapp v. Atlantic Refining Co., Tex.Civ.App., 169 S.W.2d 797, and the companion case in 170 S.W.2d 506. In the following cases writs were refused for want of merit: Humble Oil & Refining Co. v. Flanagan, Tex.Civ.App., 165 S.W.2d 508; Marine Production Co. v. Shell Oil Co., Tex.Civ.App., 165 S.W.2d 934, where the same condition existed throughout the particular area of the field; Railroad Comm. v. Magnolia Petroleum Co., Tex.Civ.App., 169 S.W.2d 794, where same conditions existed in the eight times and adjacent area; Holcomb v. Atlantic Refining Co., Tex.Civ.App., 172 S.W.2d 523, where there was no net drainage to support confiscation and no unusual conditions to support waste; Potter v. Humble Oil & Refining Co., Tex.Civ.App., 173 S.W.2d 309, where there was no net drainage and same conditions existed in eight times area, citing numerous cases on this point. It is thus apparent that, at least insofar as concerns waste, the conditions relied upon to produce it must be peculiar to the tract in issue, and must not prevail throughout either (1) the eight times area, (2) other adjacent regions of the field, or (3) the entire field.

As regards confiscation, there are only three situations in which exception has ever been sustained: (1) Where a tract (not voluntarily segregated) was too small to allow drilling within the rule, and the owner was held entitled to at least one well as a matter of law; (2) where a tract was located at the edge of the field and an additional well was essential to protect it from excess local drainage; and (3) where there was excess net drainage away from the tract in issue to adjacent tracts. The test usually applied is thus given in the recent case of Rudco Oil & Gas Co. v. Gulf Oil Corp., Tex.Civ.App., 169 S.W.2d 791, 793, error refused w. m.: Whether the evidence conclusively shows that the tract in question, with the wells then on it, "had a fair and equal opportunity to produce its oil *in relation to that of adjacent or adjoining lessees.*" Other than the first two classes of cases, there has been no case where a permit has been sustained that was granted to prevent confiscation, absent a showing that the well was essential to prevent local excess net drainage (uncompensated drainage) away from the tract involved; that is net drainage affecting peculiarly the tract involved. It is of course true that comparative density of drilling on such tract and in the surrounding eight times area is not necessarily the only criterion. Location of the wells in this adjacent area, regardless of the average density throughout the area, may produce excess net drainage of the involved tract; as for example non-compensated equidistant offset drainage. See Shell Oil Co. v. Trapp, Tex.Civ.App., 169 S.W.2d 1010, error refused w.m., and cases there cited on this point. But there must be a local situation, whatever the causal elements thereof, which produces excess net drainage of the involved tract with reference to adjacent lands. An analogous situation to that at bar was presented in Magnolia v. Railroad Comm., Tex.Civ.App., 93 S.W.2d 587, error refused. There the Magnolia contended it was entitled to drill its lease to the same density as the average throughout the field. The contention was denied. The only substantial difference between that case and this lies in the fact that here the relative density disparity is between two different sections of the field—the Kilgore townsite area and that west of it extending to the limit of the field.

It is conceded that the Commission could not lawfully grant the exception involved without according to every tract in the affected area like density of drilling. And it was stated in the argument that the Commission was willing to so allow such density in drilling whenever applied for. It is manifest that this would necessarily result in abrogating the rule in the entire affected area, and be tantamount to promulgation of a special spacing pattern therein. That this result can not be effected by specific, individual exceptions to the rule follows from the holdings in the Magnolia case, above, and the Trem Carr case; from which latter the following:

"If the Commission intended that all should be granted special permits upon request therefor, the general spacing provided for in Rule 37 was useless and should not have been adopted. If it intended to deny permits to all who applied therefor, the exceptions provided for in Rule 37 were surplusage. If it intended to grant permits to some and refuse them to others under like circumstances, the rule gives the Commission the power of arbitrary discrimination, and is void."

Also:

"* * * Upon a showing that in a particular field, *or in a particular section of a field,* on account of the peculiar formation of the underground structure or other unusual circumstances, a closer spacing of the wells is essential to recover the oil, undoubtedly the Commission would have authority to grant the exception, provided that it included all those and only those coming within the exceptional situation, and *providing further that it did not unduly discriminate in any other manner against producers in other areas* or fields. Gulf Land Co. v. Atlantic Refining Co., supra [134 Tex. 59, 131 S.W.2d 73]. The Commission would not have to be absolutely accurate in its determination of what land should be included in or excluded from the exception, provided the order has a reasonable basis in fact and a pattern is furnished by which the operators can determine their rights."

Also:

"The Attorney General contends that since none of those now contesting the granting of the permit in question have applied for and been refused a like special permit, we have no ground to assume that such a permit would be refused if requested, and, consequently, there is no evidence of discrimination against them and they are not in a position to complain. However, in our opinion, the adoption and retention of the general provisions of Rule 37 requiring all operators in the East Texas oil field to space their wells at least 660 feet apart is in itself a denial of closer spacing to every operator in the field."

Granted that an inequitable situation has been created and that Byrd (in conjunction with all others in the affected area) is entitled to some character of appropriate relief, if practical means thereto may be found, it does not follow that the Commission has the power to grant that relief through a special permit available to Byrd alone. Application for such permit, predicated solely upon a situation applicable to the entire affected area, constitutes a collateral attack upon the Rule as applied to that area. See Railroad Comm. v. Marathon Oil Co., Tex.Civ.App., 89 S.W.2d 517.

The Commission no doubt has the power to change the spacing rule as applied to the affected area, provided this is a practical, appropriate and effective method of relieving the inequity and "providing further that it did not unduly discriminate in any other manner against producers in other areas [of the field]." Trem Carr case. But such order would be in the nature of a general order, and could not properly be made without a hearing upon notice to those whose interests might be affected thereby. Many considerations might be advanced affecting the propriety, the practicality or the validity of such general order, that are not involved in or may not be applicable to the issue of confiscation as applied to a particular tract in the affected area. And clearly the Commission could not determine those matters in a contest between the applicant for a special permit and the owners of adjacent leases, who alone are notified and considered interested parties under the Commission's rules. Rudco Oil & Gas Co. v. Gulf Oil Corp., above.

It was recognized in Stanolind Oil & Gas Co. v. Railroad Comm., Tex.Com. App., 96 S.W.2d 664, 665, as well as in the Trem Carr case, that in enforcing the exceptions to the rule some inequalities might arise. And, as said in the Stanolind case: "The commission has ample power to pass such rules or orders as may be necessary to minimize the deleterious effects flowing from exceptions to the rule." That was a suit to enjoin production from a well upon a small tract (.077-acre) in the Kilgore townsite under permit granted to prevent confiscation. The owner was held entitled, as a matter of law, to one well on the tract (not a voluntary segregation). It was shown that the one well would eventually produce more oil than the tract was entitled to. In that connection the opinion reads:

"This question, and that involved in appellant's third contention, cannot properly be adjudicated in an application for temporary injunction. The well, in this instance, has already been drilled, and the only injunctive relief which could now be granted would be to restrain production. In no event can production be properly restrained, that is in toto, until Sartain has obtained the amount of oil he is legally entitled to. What measures of relief will then be open to appellant it is not necessary now to inquire into. The subject is discussed in Brown v. Humble Oil & Refining Co., [126] Tex. [296], 83 S.W.2d 935, 99 A.L.R. 1107, and Id., [126] Tex. [296], 87 S.W.2d 1069, 101 A.L.R. 1393;

also in the very recent (July 7, 1936) opinion by the U. S. Circuit Court of Appeals, 5th Circuit, in Magnolia Petroleum Co. v. Blankenship, 85 F.2d 553."

Conceding the inequitable situation throughout the affected area, and further conceding that the Commission can and should grant some character of effective relief, if such relief is practical, it does not follow that modification of the spacing rule in the affected area is the character of relief which may or should be granted. Other character of relief (e. g. through proration or reduction of production in the Kilgore townsite area) may be available. But, as already stated, these are issues which cannot be determined under an application for an exception to the spacing rule affecting a single tract in that area. They may only be determined upon a hearing held for that purpose (either upon application or upon the Commission's own motion) after notice to the interested parties.

Accordingly, the judgment of the trial court is affirmed.