## KRAKER v. RAILROAD COMMISSION OF TEXAS et al.

### No. 9504.

Court of Civil Appeals of Texas. Austin.

June 13, 1945.

Rehearing Denied July 11, 1945.

Pollard, Lawrence & Blackburn, of Tyler, for appellant.

Grover Sellers, Atty. Gen., Fagan Dickson and Elton M. Hyder, Asst. Attys. Gen., for appellee Railroad Commission of Texas.

Rex G. Baker and Nelson Jones, both of Houston, Powell, Wirtz, Rauhut & Gideon and J. A. Rauhut, all of Austin, for appellee Humble Oil & Refining Co.

BLAIR, Justice.

A Rule 37 case. The Commission denied appellant Kraker a permit to drill a second well on his 4.22-acre tract of land in the Hawkins oil field, Wood County, Texas. The trial court sustained the order of the Commission denying the well; hence this appeal.

After discovery of the Hawkins field the Commission adopted therefor a 466-933' spacing rule with the usual exceptions to prevent waste or confiscation, and adopted a proration rule apportioning one-half of the entire field (slightly less than 9,000 acres) allowable between all wells equally, and one-half on the basis of acreage, with 20 acres to the well as the standard unit. The Commission has continuously enforced the spacing rule by allowing only one well on each tract of less than 20 acres entitled to separate development under the confiscation clause.

The 4.22-acre tract is situated at the edge of the Hawkins townsite and within its eight times circular area, has larger and less densely drilled tracts to the north and west, has smaller and more densely drilled tracts to the south and east, and has the densely drilled Hawkins townsite lots to the southwest and immediately adjacent to the eight times circular area. At the time of the order denying the well in question there were sixteen wells in the eight times circular area, a density of one well to each 2.11 acres, and with the second well the 4.22-acre tract would be drilled to the same density as the eight times circular area surrounding it.

Appellant cites the foregoing facts, and by eleven points raises the one basic contention that he is at a disadvantage both from the standpoint of drainage and withdrawals with his neighbors, and that without the second well he is not accorded a fair and equal opportunity to develop his property; and that in consequence his property is being confiscated. Appellant also cites as being applicable the rule stated in the case of Magnolia Petroleum Co. v. Railroad Commission, Tex. Civ. App., 127 S.W.2d 230, 233, that: "The method generally applied in determining whether a tract in question is at a drainage disadvantage, or, to put it differently, whether the owners thereof are given an equal opportunity with lessees of the surrounding properties to recover their fair share of oil in place beneath such tract, is to compare the density and location of wells on such tract with those on the surrounding 8 times area."

The rule is settled, however, that "the average density of the eight times surrounding area, as compared to a given area, has never been accepted as a conclusive criterion on the issue of drainage and confiscation. It is at most but evidentiary and can give no vested right in a given producer to drill a given tract to such density." Miller v. Railroad Commission, Tex. Civ. App., 185 S.W.2d 223, 225, writ refused; Shell Oil Co. v. Railroad Commission, Tex. Civ. App., 133 S.W. 2d 791; Shell Oil Co. v. Trapp, Tex. Civ. App., 169 S.W.2d 1010.

In accordance with the foregoing rule the Commission and intervenor Humble Oil & Refining Company made the contentions, which the trial court sustained, that the eight times area density rule (1) had no application to the Hawkins field; and (2) that, in any event, the well on the 4.22-acre tract will produce at the present rates the equivalent of the oil to which it is entitled during the remainder of the life of the field under the Hawkins field Rule 37.

The eight times area density rule or device as adopted for and applied to the East Texas field is not applicable to the Hawkins field, because the proration unit in the East Texas field was upon a per well basis only; whereas the production formula for the Hawkins field apportioned one-half of the allowable of the entire field between all the wells equally and one-half on an acreage basis. The Hawkins field is a gas cap and high pressure field. The East Texas field has no gas cap. Where gas cap and high pressure exist the danger of blowouts and cratering is ever present, which danger is multiplied by density of drilling. Therefore, the eight times area rule or device was not an accurate measure of rights or drainage in the Hawkins field.

The evidence was also sufficient to sustain the Commission and the trial court that the one well on the 4.22-acre tract will produce at the present rates the equivalent of the oil to which it is entitled during the remainder of the life of the Hawkins field under its Rule 37.

Under the Hawkins field rule the entire field had been drilled to an average density of one well to 22.16 acres, and each well had a daily allowable of 4.99 barrels per acre, with an average accumulated production of 2615 barrels per acre. Under such formula the 4.22-acre tract with one well had a daily allowable of 18.48 barrels, with a total accumulated production of about 10,000 barrels per acre, and had an advantage over leases constituting 98.7% of the field from the standpoint of density, allowable accumulated production per well, and was approximately five times more densely drilled and had more than three and one-half times greater allowable per acre as compared to the whole field. It was also shown that the one well on the 4.22-acre tract will produce at the present rates the equivalent of the recoverable oil then in place in about twelve years less time than the time required for the field as a whole to produce the recoverable oil thereunder.

The permeability and porosity of the sand and all other reservoir conditions pertaining to the 4.22-acre tract are normal and as good or better than the average of the field, and it is located in the area of the field having the longest producing life. At the time of final action by the Commission the 4.22-acre tract had suffered no net drainage of oil as the result of the more densely drilled area to the south and east, because any such drainage had been replaced by drainage to the tract from the less densely drilled area to the north and west, and by natural migration of oil thereto. That is, appellant had produced from his one well on the 4.22-acre tract about 43,000 barrels of oil, which had been replaced by drainage to the tract, because the tract has continuously had as much oil in place as it originally had, and which condition will continue under the present rates of production for a period of five or more years, during which time appellant will produce at the same rates some 80,000 barrels of oil, which added to the 43,000 barrels already produced will make a total of about 123,000 barrels produced before any depletion of his lease begins.

The evidence also showed that a second well on the 4.22-acre tract will further increase its density advantage over the less densely drilled area to the north and west and cause additional drainage therefrom, and will increase the concentration of drilling of the already densely drilled area and cause uneven withdrawal of oil from the field, because if the second well is granted, others would be entitled to permits as offsets, which would be granted to prevent discrimination, and thus multiply the number of wells over the field.

The Commission has continuously enforced its Hawkins field Rule 37 by granting only one well to each tract of less than 20 acres entitled to separate development, under the settled rule of law that each such tract entitled to separate development is entitled to one well regardless of the size of the tract. Dailey v. Railroad Commission, Tex.Civ.App., 133 S.W.2d 219, writ refused; Nash v. Shell Petroleum Corporation, Tex.Civ.App., 120 S.W.2d 522, error dismissed. This application of the rule has necessarily resulted in a wide range of densely drilled areas, because of the varying sizes of the tracts of land therein. This disparity does not result, however, from any discrimination or unequal enforcement of the rule by the Commission, but is due to the rule itself, which entitles everyone to develop his tract of land under the exception thereto to prevent confiscation of property. The foregoing facts are sufficient to sustain the conclusion of the Commission and trial court that appellant will be allowed to recover during the life of the field the equivalent of the recoverable oil beneath his tract. That is, the evidence is sufficient to show that the tract of appellant and other small tracts are located in an area where each of them has and will receive an advantage during the remaining life of the field of more than their respective fair share of the oil from the entire field. It is true that the smaller tracts to the south and east of appellant's tract have a consequent advantage over appellant, but he in turn has density and recoverable advantage over the larger and less densely drilled tracts to the north and west, and over 98.7% of the tracts in the entire field. In consequence appellant is not complaining because he will not get his fair share of the oil from the field, but because others to the south and east will receive a greater share of the oil than they are entitled to receive. Such facts furnish no basis for the permit to drill the additional well on his tract. Gulf Land Co. v. Atlantic Refining Co. et al., 134 Tex. 59, 131 S.W.2d 73; Railroad Commission v. Gulf Production Co., 134 Tex. 122, 132 S.W.2d 254; Empire Gas Co. v. Railroad Commission, Tex.Civ.App., 94 S.W.2d 1240, writ re-

fused; Stanolind Co. v. Midas Co., Tex. Civ.App., 123 S.W.2d 911, writ dismissed; Miller v. Railroad Commission, Tex.Civ. App., 185 S.W.2d 223, writ refused; Byrd v. Shell Co., Tex.Civ.App., 178 S.W.2d 573, writ refused, Want of Merit. These last two cases hold under entirely similar facts that if appellant were granted a permit to drill a second well, it would thereby discriminate as to others, who would be entitled to offset wells, thus bringing about an intensive drilling campaign with its attendant resulting evils; and that in consequence appellant's remedy would be an increased allowable if he is suffering any injustice or inequality. The proof showed that to drill the field to the density of the tract of appellant and the smaller tracts to the south and east would require the drilling of 121,000 new wells, thus destroying the spacing rule. Sun Oil Co. v. Gillespie, Tex.Civ.App., 85 S.W.2d 652, 654, error dismissed.

Nor is appellant's remedy another well on the 4.22-acre tract to offset the densely drilled Hawkins townsite lots area, even though he was not being afforded an equal and fair opportunity to recover his oil by the one well. The Byrd case, supra, so holds.

Under our above conclusions the cross-assignments of error of the Commission relating to the admissibility of certain testimony become immaterial and need not be discussed.

The judgment of the trial court is affirmed.

Affirmed.