### WOOLLEY et al. v. RAILROAD COMMISSION et al.

No. 9985.

Court of Civil Appeals of Texas. Austin.

Oct. 10, 1951.

Lawrence & Lawrence, and Pollard, Reeves & Boulter, Tyler, for appellant.

Price Daniel, Atty. Gen., Charles E. Crenshaw, Durward M. Goolsby, Dean Capp, Asst. Attys. Gen., by Durward M. Goolsby, for appellee Railroad Commission of Texas.

Rex G. Baker, Nelson Jones, Dillard Baker, Houston, Powell, Wirtz & Rauhut, J. A. Rauhut, Austin, for appellee Humble Oil & Refining Co.

Black & Stayton, Austin, for appellees Ohio Oil Co., Atlantic Refining Co. and Texas Co.

Turner, Rodgers, Winn, Scurlock & Terry, Dallas, for appellee Stanolind Oil & Gas Co., L. A. Thompson, Jr., Tulsa, Okl., of counsel.

HUGHES, Justice.

This is a Rule 37 case.

Appellants are O. S. Woolley and Mrs. N. R. Wyatt, a feme sole. Appellees are the Railroad Commission of Texas, its members, and Stanolind Oil and Gas Company, Humble Oil and Refining Company, The Texas Company, The Ohio Oil Company, and the Atlantic Refining Company.

The suit filed by appellants in the court below was in the nature of an appeal from the order of the Railroad Commission denying their application for permits to drill four oil wells to be located on a lease known as the Woolley-Wyatt-J. S. Pinkston lease and described as containing 10.2 acres of land out of the J. B. Cadena League Survey in Rusk County.

The J. S. Pinkston fee tract, out of which appellants' 10.2 acre tract was carved, contains 197.88 acres and, as reflected by their application appellants "would show that as the owners and operators of an oil and gas mining lease and leasehold estate out of and a part of the J. L. Pinkston Fee of 197.88 acres tract in the J. B. Cadena League of Rusk County, Texas, they are entitled to the said wells sought in this said Application because such locations and wells are necessary and right in order that the owners of the oil and gas in and under the said J. L. Pinkston Fee tract of 197.88 acres may recover the oil and gas or its equivalent in kind which originally underlay said tract and from which production is being obtained in and under said tract and the adjoining area and the East Texas Field as a whole."

Appellants seek the four additional wells in order to prevent confiscation and no question of waste is involved.

Their theory of confiscation, supported by evidence, is that the East Texas field is a water drive field and that as oil is withdrawn from the reservoir the water encroaches from the west and moves toward the east pushing the oil before it. The inevitable result of this is that leases in the western portion of the field will recover less oil than was originally under such tracts and leases in the eastern portions of such field will recover more.

Appellants' witness, Mr. Griffin, testified that even with the four additional wells the Pinkston fee tract could not recover the oil originally in place and that for such recovery 60 additional wells would be needed, and if it is proper to permit 4 additional wells on the Pinkston tract, it would be proper to allow 60 additional wells thereon. Also that if other tracts similarly situated were accorded the same privileges that thousands of additional wells would be drilled in the East Texas oil field.

The record affirmatively shows, and appellants do not deny, that the Pinkston 197 acre tract is receiving its fair share of oil when compared with adjoining leases and when compared with the eight times area surrounding such tract.

With respect to the 197 acre Pinkston tract, appellants specially pleaded: " * * * that such property is located in what is known as the East Texas Field which is a common pool producing from a common horizon, with conditions and such oil producing sands and horizon, such as permeability, porosity, saturation depth, thickness, bottom hole pressure, and all other

factors affecting the spacing of wells, drilling and producing of oil and gas insofar as they affect the conservation of oil and gas, being to all intents and purposes the same."

There is no evidence that there are any local conditions affecting the Pinkston tract which are peculiar to it and are not shared by adjacent and surrounding leases.

In the case of Miller v. Railroad Commission, 185 S.W.2d 223, 226 (Austin, Tex. Civ.App., writ ref.), it is held that in cases of this character the remedy, if any, is one to be provided by a general rule promulgated by the Commission and not by granting exceptions to the spacing rule.

That case likewise involved the East Texas field and dealt with the same geophysical fact of migration of the oil from west to east due to water pressure.

In denying permits for additional wells on small tracts which were sought on the ground that the density of wells on such tracts was less than the eight times surrounding area, the Court, after holding that the eight times area test was not conclusive, stated: "Nor is this case ruled by Railroad Comm. v. Magnolia Pet. Co., Tex. Civ.App., 169 S.W.2d 253. The rule announced in Byrd v. Shell Oil Co., Tex.Civ. App., 178 S.W.2d 573, is, we think, here controlling. The decision in Magnolia case was based on uncompensated net local drainage as between adjoining tracts in the given area. In the instant case excess local drainage from one tract as such to another tract as such was not shown. On the contrary all of the oil originally in place had already been produced from all of said tracts. And regardless of the density of a given tract, or the amount of production therefrom, all of such oil was replaced, not by local drainage, but by the general regional migratory movement from the west, which flowed into all wells alike regardless of local density. Thus, as stated in the Byrd case, the situation presented is a general condition for solution by the Commission, not applicable alone to a particular tract, or to a particular area, in this section of the field; and not one to be solved by exception as to a particular tract in the affected area."

In the Byrd case,[1] cited in the above quotation, "Appellant Byrd's exact contention is that to the east of his tract is the townsite of Kilgore and this townsite is very densely drilled to the extent, in some instances, of twenty-seven wells per acre, which has produced a low pressure area, causing the water drive from west to east to increase and that the wells on his tract will be drowned out before they will have produced a quantity of oil equal to the amount which originally underlay his tract. The Kilgore townsite is about three-fourths of a mile from the Byrd tract. It is further shown that this condtion is true of the entire segment of the field which lies between Kilgore and the west edge of the field."

In upholding the action of the trial court in cancelling the permits issued to Byrd, the Court said: "The Commission no doubt has the power to change the spacing rule as applied to the affected area, provided this is a practical, appropriate and effective method of relieving the inequity and 'providing further that it did not unduly discriminate in any other manner against producers in other areas [of the field].' Trem Carr case [Railroad Commission v. Shell Oil Co., Tex.Civ.App., 161 S.W.2d 1022]. But such order would be in the nature of a general order, and could not properly be made without a hearing upon notice to those whose interests might be affected thereby. Many considerations might be advanced affecting the propriety, the practicality or the validity of such general order, that are not involved in or may not be applicable to the issue of confiscation as applied to a particular tract in the affected area. And clearly the Commission could not determine those matters in a contest between the applicant for a special permit and the owners of adjacent leases, who alone are notified and considered interested parties under the Commission's rules. Rudco Oil & Gas Co. v. Gulf Oil Corp., [Tex.Civ.App., 169 S.W. 2d 791] above."

1. Writ of error dismissed, w. o. m.

814

See also Humble Oil and Refining Co. v. Flanagan, Tex.Civ.App., 165 S.W.2d 508, 510 (writ ref.w.o.m.), where this Court said: "Much of Griffin's testimony was devoted to his theory that a more intensive drilling pattern was required throughout the western portion of the field (in which this section is located), due to water encroachment. This testimony, however, had no bearing on the issue of confiscation. Furthermore, it was in no essential respect different from that in the Trem Carr case (Railroad Comm. v. Shell Oil Co., Tex.Sup., 161 S.W.2d 1022); and that in several recent decisions by this court. This theory, as a basis for additional drilling, was held untenable in the Trem Carr and later cases."

In our opinion, the theory of confiscation advanced by appellants is untenable under the above decisions.

Appellants also complain that the trial court erred in denying them a jury trial. If there was error in this, it is harmless as no material fact issues were presented.

The judgment of the trial court is affirmed.

Affirmed.